## CONSTRUCTION OF THE STATUTE RELATING TO CRUELTY TO ANIMALS.

[Lake County Circuit Court.]

ANTOINETTE MUHLHAUSER v. THE STATE OF OHIO.

Decided, October Term, 1900.

*Procedure—Affidavit Before Justice of the Peace—An Information not Necessary—Ignorance of the Owner as to Cruelty a Valid Defense, When—Cruelty Statutes Framed with Reasonable Certainty—How the Offense should be Charged.*

1. Jurisdiction is given to justices of the peace under Section 3719a to proceed with the trial of one accused of cruelty to animals upon the filing of the proper affidavit, and without the filing of an information.

2. Several offenses may be charged in the same complaint, but they must be separately stated in such a form as to provide a complete and separate setting forth of each offense.

3. Where the owner provides sufficient help to properly care for the animals placed in their charge, and exercises reasonable care and prudence in so doing, and provides wholesome food and water in sufficient quantities, it is a sufficient defense to a charge of cruelty against such owner to show that he did not know that they were not being properly fed and cared for.

FRAZIER, J.; LAUBIE, J., and BURROWS, J., concur.

The case of Antoinette Muhlhauser against the State of Ohio is a petition in error to reverse a judgment of the court of common pleas affirming a judgment of John C. Ward, justice of the peace of this township.

A bill of exceptions was taken setting out all of the evidence, the requests to charge and the charge as given, and numerous exceptions that were taken in the progress of the trial.

The question around which they all cluster is, substantially, a question as to the construction of the statute under which the prosecution was commenced.

The affidavit is this:

"Before me, John C. Ward, a justice of the peace in and for said county, personally came Sultan St. John, who being duly sworn, according to law, deposeth and saith, that on or before the 6th day of July, A. D. 1897, at the county of Lake, one Antoinette

Muhlhauser and one John Curtiss, whose real name is to affiant unknown, did unlawfully and willfully torture, torment and deprive of necessary food and sustenance certain animals, to-wit, five calves, twenty-three sheep and one heifer and two horses, by confining said animals in a certain field there situate for the space of seven days, and did unlawfully and willfully fail to supply said animals while so as afaoresaid then and there confined by them with a sufficient quantity of good and wholesome food and water, and by then and there failing and neglecting to shear said sheep, whereby unnecessary and unjustifiable suffering was caused to said sheep, and by then and there fastening about the bodies of certain of said sheep, to-wit, two rams, certain cloths in such a manner as to cause urine and excretions from said animals to soak into the wool and skin of said animals and produce a rotten, decayed, maggoty and filthy condition, and to cause said rams great pain and suffering."

This affidavit was filed under favor of Section 6951 of the Revised Statutes, which provides for the punishment of several distinct offenses. But no question of that kind has been made or suggested to us, and in the view we take of this case it will not be necessary for us to analize and determine that question.

Section 6951 reads:

"Whoever overdrives, overloads, tortures, torments, deprives of necessary sustenance, or unnecessarily or cruelly beats, or needlessly mutilates or kills any animal, or impounds or confines any animal in any place and fails to supply the same during such confinement with a sufficient quantity of good wholesome food and water, or carries in or upon any vehicle, or otherwise, any animal in a cruel or inhuman manner, or who keeps cows or other animals in any enclosure without wholesome exercise and change of air, or feeds cows on food that produces impure or unwholesome milk, or abandons to die any maimed, sick, infirm or diseased animal, or, being a person or corporation engaged in transporting live stock detains such stock in railroad cars, or in compartments for a longer continuous period than twenty-four hours after the same are so placed, either within or beyond this state, without supplying the same with necessary food, water and attention, or permits such stock to be so crowded together as to overlie, crush, wound or kill each other, shall be fined not more than two hundred nor less than five dollars, or imprisoned not more than sixty days, or both."

It is insisted that the justice had not jurisdiction to try and determine the case, and that it was error to proceed to trial upon the affidavit, without filing an information.

Jurisdiction is given the justice by the following sections of the Revised Statutes. Section 3718 reads:

"Such associations may appoint agents for the purpose of prosecuting any person guilty of any act or cruelty to persons or animals within this state, who shall have power to arrest any person found violating any of the provisions of this chapter, or·any other law for the purpose of protecting persons or animals, or preventing any act of cruelty thereto, and upon making such arrest, such agent shall convey the person so arrested before some court or magistrate having jurisdiction of the offense, within the municipal corporation or county wherein the offense was committed, and there forthwith make complaint on oath or affirmation of the offense; but all appointments by such associations under this section must have the approval of the mayor of the city· or village in which the association exists, and if it exists outside of any city or village the appointments must be approved by the probate judge of the county."

Section 3718a provides:

"Any justice of the peace within his county and city, and police judge or mayor of any city or village within his city or village, shall have jurisdiction in cases of violation of the laws to prevent adulteration of food and drink, the adulteration and deception in sale of dairy products, and drugs and medicines, and any violation of the law for prevention of cruety to animals or under Section 6984 of Revised Statutes, or Section 6984a thereof, as herein enacted." (Section 6984a prohibits the employment of children in certain occupations.) "If such prosecution be before a justice of the peace and a trial by jury be not waived,"—there is a provision made in this section for the impanneling of a jury for the trial of the defendant.

I do not desire to read of those sections bearing upon it, but shall merely refer to them.

Section 3719 provides that magistrates may authorize an examination of certain places for the purpose of detecting any violation of law in regard to animals.

Section 3719a provides that sheriffs, constables, marshals, police officers or any agent for any duly incorporated society for the prevention of cruelty to animals, when they have reason to believe certain facts enumerated, may arrest persons they have reason to believe are about to violate the provisions of Section 6952 of the Revised Statutes, and take them before a magistrate named in

Section 7106, who, upon the proper affidavit being filed, shall hear the witnesses produced under oath, etc.

Section 3720 provides, an officer, agent or member of any such association may interfere to prevent the perpetration of any act of cruelty to animals in his presence.

Section 3722 provides that "a member of any such association may require the sheriff of any county, the constable of any township, the marshal or policeman of any city or village, or the agent of any such association, to arrest any person found violating the laws in relation to cruelty to persons or animals, and to take possession of any animal cruelly treated, in their respective counties, cities or villages, and deliver the same to the proper officers of such associations." It then provides for compensation to such officers.

Section 3723 provides "A person guilty of cruelty to an animal, the property of another, shall be liable to the owner thereof in damages, in addition to the penalties prescribed by law."

Section 3724 provides "The conviction of an agent or employe shall not bar an action for cruelty to animals against an employer for allowing a state of facts to exist which will induce cruelty to animals on the part of such agent or employer."

Section 3725 provides that "Whenever it may be necessary, in order to protect any animal from neglect, any person may take possession of the same; and whenever an animal is impounded, yarded or confined, and continues without necessary food, water, or proper attention for more than fifteen successive hours, any person may, from time to time, and as often as it may be necessary, enter into and upon any place in which said animal is so impounded, yarded or confined, and supply it •with necessary food or water and attention, so long as it there remains, or may, if necessary or convenient, remove such animal, and shall not be liable to any action for such entry; in all cases the owner or custodian of such animal, if known, shall be immediately notified of such action by the person taking possession of such animal; if the owner or custodian be unknown, and can not be ascertained with reasonable effort, such animal shall be held to be an astray, and shall be dealt with as such."

I have referred to sections following 3718a under the rule that in interpreting a statute we may look not only to the words of the section, but to all the provisions of the statute upon the subject. A

statute may be considered as not limited by the words, but the words may be qualified by ascertaining the meaning of the Legislature in the enactment of the law.

It is urged that the justice before whom the action was tried erred, first, in holding that he had jurisdiction under the affidavit without there being filed an information. The statute provides only for the filing of an affidavit, and no information other than the affidavit is necessary to put the defendant upon trial.

It is claimed the justice erred in the rejection of evidence and in the charge as given, and in the refusal to charge.

I might consume time by referring to authorities, but I shall content myself with referring to but a few, and without stopping to read them.

The affidavit charges the act as being willful. It is claimed, however, in argument before us and also as the trial proceeded before the justice, that it was neither necessary for the prosecution to show willfulness, nor was it any defense for her to show that she did not know of the acts complained of; that it was no defense to her to show that she had employed a person who was recommended to her as being kind to animals; that she had provided sufficient food for the animals; that she had no knowledge of their being destitute of the proper food and water, or that she had no knowledge of the circumstances or conditions complained of.

It appears from the evidence that her co-defendant, or the person jointly charged with her in the affidavit, had been employed by her as the foreman upon her farm. That relation continued up to the time of the arrest. The testimony shows that immediately after the arrest he left her employ. Mrs. Muhlhauser was alone put upon trial and her late foreman and manager was called as a witness for the prosecution.

The testimony shows her farm contained from one hundred and seventy-five to two hundred acres; but a comparative small portion was that year being cultivated in growing crops. The animals mentioned in the affidavit were being kept in a small field, in a remote part of the farm; that by reason of drought the water in the field, which ordinarily afforded a sufficient supply, failed; and for the same reason and because of the number of animals confined in the field the pasture failed, not a sufficient supply of grass; and thereby were deprived of a sufficient supply of food and water; that on

portions of the farm there was a sufficient quantity of good wholesome pasture and water of a suitable kind for their support.

The testimony shows Mrs. Muhlhauser is a widow lady, who, when the city schools were in session lived in Cleveland, where her children attended school. That during vacations she was upon the farm in Lake county. She testifies that in the latter part of June she was sick in Cleveland, not being able to dress herself; and not upon the farm, except on Saturday before the Fourth of July she had her driver take her to the farm where she stayed over Sabbath; that she did not go out on Sabbath day and did not see the animals on that occasion; that she had not seen them since about the first of June; that she believed her foreman was looking after them, and would properly care for them.

There are some discrepancies between the testimony of Curtiss and that of Mrs. Muhlhauser. He evidently is willing she should be convicted. He testified he was in charge of the farm, had its management and the care of the live stock on it, including the animals in question; that he spoke to her about the shearing of the sheep, and she was not willing to pay the price that would have to be given, but wanted the men on the farm to shear them. He claimed to be a farmer; was raised on a farm; had shorn sheep on his father's farm; and he did afterward shear some of these sheep. Yet with five hands employed on this farm, four beside himself, he wanted other help to shear the sheep. She insisted she would rather the men on the farm would shear them and not hire outside help, and they did finally shear them.

He testified that on a Sabbath when defendant was at the house, he drove her in a carriage over the farm, and past the field where the animals were; but does not fix the time. He testifies that at the time the animals were turned in the field there was a sufficient quantity of good wholesome water and pasture of a suitable kind and quantity for their suitable food and support, and that he did not at any time know they were in the field without a sufficient supply of water and food of a suitable kind for their support.

The case was tried by the complainants and the justice on the theory that if the defendant was the owner of the animals and they had not a sufficient supply of food and water or suffered from other acts of neglect or other acts of cruelty, she should be found

guilty. The justice refused to admit evidence offered by defendant to show want of knowledge by her of the matters complained of.

The charge is misleading and not applicable to the facts. It might have been applicable and relevant if the animals had been impounded or confined by her and she had failed or neglected to furnish them with food and water.

The justice, as requested by the prosecution, charged the jury that they "should find the defendant guilty provided they found she was the owner or had control and management of said animals," and also charged, "It is no excuse that she did not know they were without sufficient food and water; it was her duty to inform herself of their wants, and a failure to do so would result in cruelty to animals, for which you should find her guilty."

Counsel for defendant requested the justice to charge "If it be shown by the evidence that the defendant employed help to take charge of her said animals, and in making such employment she exercised ordinary prudence, skill and judgment * * * she is not required by the law of the land to personally inspect or visit them * * * provided she left or placed within their control the means necessary for the proper care of said animals;" which requests justice refused to give, and did not give either as requested or in substance.

The affidavit charges the acts as done willfully; to be willful, they must have been knowingly and purposely done. The presumption is in favor of innocence. We know of no case where an act is held criminal, unless the intention accompanies the act, either expressly or is necessarily inferred from the act itself. "*Ignorantia facti* doth excuse for such ignorance, many times makes the act itself morally involuntarily." 1 Hales P. C., 42 (Such ignorance must be of fact, not of law).

To warrant a conviction there must have been both will and act entering into the transaction. The fact that she was wholly ignorant of the matters complained of; that she was free from all knowledge or intention of violating the statute, would constitute a valid defense to the charge.

The act made criminal by the statute must be knowingly done. In support of the foregoing propositions I cite, without stopping to read from them: *Anderson* v. *State,* 7 Ohio, pt. 2, 250; *Birney*

v. *State,* 8 Ohio, 230; *Miller and Gibson* v. *State,* 3 O. S., 475; *Farrell* v. *State,* 32 O. S., 456.

It is insisted the holdings below are warranted by the decisions under the act to provide against the adulteration of food and drugs. Shauck, J., in *State* v. *Kelly,* 54 O. S., 166, 178, says of that act:

"The act is not a provision for the punishment of those who sell adulterated food and drugs, because of any supposed turpitude prompting such sales as indicated by them. Its purpose is indicated by its title. It is an act to provide against the adulteration of food and drugs. It is a plan devised by the General Assembly to protect the public against the hurtful consequences of the sales of adulterated food and drugs, those consequences being in no degree increased by the vendor's knowledge, or diminished by his ignorance, of the adulteration of the articles which he offers for sale."

The judgment of the court of common pleas and the judgment and sentence of the justice is reversed and the cause remanded to the justice for the reasons that the justice erred in rejecting evidence offered by defendant, and in the charge as given and in refusing to charge as requested, and that the evidence does not support the verdict.


BURROWS, J.

Upon the argument of this case, our laws for the prevention of cruelty to animals received a large measure of criticism from counsel; not, however, as to the policy or propriety of such laws, but it was charged that these laws had been so carelessly and bunglingly framed as to render their meaning uncertain and their enforcement difficult. Upon a pretty careful examination of our statutes upon this subject we are inclined to think that such criticism is unjust and that these laws were framed with reasonable certainty and can be enforced without any serious difficulty.

To accomplish the end in view by the Legislature the repression of the brutality of man in his treatment of dumb animals—the use of such general words as "torture" and "torment" were not

only proper but unavoidable. But their meaning as used in these statutes is specifically defined in Section 3721, which provides:

"The words torment, torture, and cruelty shall be held to include every act, omission or neglect whereby unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue when there is a reasonable remedy or relief."

Section 6951 makes the commission and omission of various specific. acts criminal, and then, in addition to these specific acts, makes it an offense "to torture or torment" any animal. Overdriving, overloading, depriving of necessary sustenance, unnecessarily or cruelly beating, needlessly mutilating or killing, keeping in an enclosure without wholesome exercise and change. of air, etc., etc., are all separate offenses, and the complaint for such offenses should specify the acts done or omitted so as to describe and identify the transaction with reasonable certainty; while the prosecutions for torturing or tormenting animals should not only use one or both of these words but should give the acts of omission or commission which constitute the torture or torment of the animal, with the allegation that such acts caused unnecessary or unjustifiable pain or suffering to such animal, unless the acts themselves describing the offense necessarily make it evident that such pain or suffering was caused thereby.

While several of these separate offenses may undoubtedly be charged in the same complaint, they must, however, be separately stated so that there shall be a complete and separate statement of each separate offense.

For an illustration, let us take the complaint in this case and examine it for the purpose of determining, if we can, what offense or offenses, if any, are properly charged therein. It alleges that on the 6th day of July, 1897, Antoinette Muhlhauser "did unlawfully and willfully torture, torment and deprive of necessary food and sustenance certain animals, to-wit, five calves, twenty-three sheep and one heifer and two horses, by confining said animals in a certain field there situated for the space of seven days, and did unlawfully and willfully fail to supply said animals, while so as aforesaid then and there confined by her, with a sufficient quantity of good and wholesome food and water."

More than one offense is attempted to be described in what I have read, and two more offenses follow in the same sentence which I have not read. So many different offenses are confused and conglomerated in this one charge that it would be impossible to make any distinct offense out of the entire complaint, except by picking out and putting together phrases here and there, and holding the rest to be surplusage. It is charged that she deprived certain animals of necessary food and sustenance for the space of seven days, which constitutes under this statute an offense; but this charge is qualified by the statement that such animals were deprived of food and sustenance by confining them in a certain field and then failing, while they were so confined, to supply them with a sufficient quantity of good and wholesome food and water. Confining or impounding animals and then failing to supply them with sufficient quantity of food and water, and depriving them of necessary food and sustenance when not confined or impounded, are distinct offenses. In this case the charge of depriving them of necessary food and sustenance is merged or submerged in the charge of failing to provide them with sufficient quantity of good and wholesome food and water when they were impounded or confined.

The charge of confining or impounding was not sustained by the proof, and it is doubtful whether it was well charged by the allegation that they were "confined in a certain field."

There is an attempt to charge cruelty in failing to shear the sheep, and the further charge is attempted to be made that two rams were tortured, but neither of these offenses can be held to be properly charged except by expunging all that precedes these separate charges and connecting each of them with the opening phrase "did unlawfully and willfully torture."

There was no difficulty in making these four separate charges, to-wit: That the accused unlawfully deprived certain animals of necessary food and sustenance; that she impounded and confined certain animals, describing them, for a certain time and then failed to supply them with a sufficient quantity of wholesome food and water; that she unlawfully tortured and tormented certain sheep by leaving them unshorn; and that she tortured and tormented two certain rams in the manner described in the complaint.

I make these suggestions not for the purpose of criticising the complaint in this case, or because it is necessary that anything

should be said to supplement the comprehensive opinion of Judge Frazier, but solely for the purpose of promoting, if possible, the proper enforcement of these just and humane laws.

*Tuttle & Tuttle* and *E. L. Hessenmueller,* for plaintiff in error.
*Bosworth & Hammer,* for defendant in error.